we'll begin with the Pepsi case. Miss McClain. Good morning. Good morning. May it please the court. I'm Margaret McClain for the appellant Sepsa. Sepsa is now back here before this court. It's sometimes it's it's not your fault. Closer to be desired. That's much better. Okay, good. All right. So appellant Sepsa is back here before this court for the third time now. 11 years later still trying to get its claims to a jury. I think you've seen several of us before. Two. I'd like to focus my argument today on Sepsa's first point on appeal, which is the wrongful termination claim because I think that's the most important and where the district courts are is just really clear. You really only need two documents to evaluate that claim. You need the party's contract the EBA specifically paragraph 22 and you need this court's presidential opinion in payroll express against Aetna. Hold on just a second. Miss McClain. Troy, there's there's some feedback coming through that so I don't can you. Better? Oh, pardon. Yeah, and why don't you start over? Sorry, just we're not going to. Sure. Start from the very beginning. Thanks. We understand that you've been here before with that part. We've been here before. All right. Thank you. The wrongful termination claim. I'd like to focus on that. Two key documents to resolve this point on appeal. Sepsa's contract specifically paragraph 22 of the EBA and this court's opinion in the payroll express case payroll express against Aetna. Here's what we learned from payroll express. New York does have a policy of avoiding perpetual commitments, but it limits that policy to contracts having no termination provision at all and has held it inapplicable to contracts of the type before us here would provide for termination or cancellation upon the occurrence of a specified event in this case is on all fours with payroll express. There, as here, Aetna, the insurer, had the option of terminating the contract upon payroll express's failure to pay premiums. Now, Pepsi took the position before the district court and also in its brief to this court that in payroll express, the contract necessarily terminated upon the occurrence of the stated event and that that was a distinction between this contract. It just isn't so.  The company has the option to terminate the contract. Just as Pepsi did here. So really what we need to talk about is are the events listed in paragraph 22 exclusive or are they non-exclusive? The district court found that they were not exclusive. So you're saying it was a contract in perpetuity, essentially? No, Your Honor. I'm saying it is a contract for an indefinite term that was capable of potentially lasting indefinitely, but which had a set of reasons for which it could terminate and no others. Were there terms under which the bottlers could terminate? No, Your Honor. It's silent as to the bottler, which incidentally is exactly what we had in payroll express as well. Only Aetna had the option to terminate and it was silent as to what payroll express could do. Now, realistically, SEPSA could simply stop bottling. It could go out of business. It could negotiate its way out of the contract if it had wanted to, but it wouldn't want to. It didn't want to because this commitment to this exclusive territory was very precious to it and it had no desire to get out of the contract. It bargained away its right to terminate it. Well, in exchange for Pepsi's reciprocal promise, we're not going to terminate for arbitrary reasons either. So, again, the district court found that the five events in paragraph 22 were non-exclusive, but there's not a word in the contract to support that reading. It's really very clear. Upon the happening of any one or more of the following events, the company shall have the right to terminate and cancel. And it lists them, one, two, three, four, five. It doesn't say events that are like these or for any other events or for any other reason. It simply says, these are the five events, period. Now, this court's Rothenberg case is also very helpful in interpreting that kind of language, what this court makes of a list of termination events like that. In Rothenberg, the plaintiff was employed at a camp for a set duration. There was a list of termination events for which the camp could terminate prior to the set duration. There's war, epidemic, famine, all of these terrible things, or for any other reason. Now, even in the presence of that language or for any other reason, which is absent from the sepsis EPA, this court was unwilling to find as a matter of law that those events meant nothing, that they were mere surplusage. And so it remanded for consideration of extrinsic evidence to see what for any other reason could have meant. Here we have nothing like that. There is no counterbalance to the exclusivity of these events. Now, Pepsi knows how to use the words for any other reason if it wants to. In fact, in 22C, where it's listing one of the termination events, it says sepsis, discontinuance of the bottling of the beverage for any reason whatsoever. Pepsi knows that language. It just didn't choose to use it with regards to these five termination terms. There are five exclusive events. And for that reason, this is a contract, again, on all fours of Payroll Express for an indefinite term, but that has a condition upon which the agreement may terminate. It's therefore not disfavored. It's not subject to any presumptions against perpetual contracts. It is enforceable according to its terms. And for this reason, the district court's finding on this should be reversed. Another distinction that Pepsi had attempted to draw was to say that the termination events listed in paragraph 22 were supposedly universal. First of all, it's just not true. As a practical matter, for instance, it's not universal that if a company sells some of its shares, for instance, that all of its contracts are terminable. But even if it were, you can look again at Payroll Express. Non-payment of premiums was the termination event there. What could be more obvious, more universal a reason to terminate a contract for insurance than the insurance non-payment of premiums? It doesn't matter. All that matters is that there is a condition upon which the contract may terminate at any time. And that's all that's required in order to elevate the contract out of the world of quote-unquote disfavored perpetual contracts and into the world of indefinite contracts that are enforced according to their terms under New York law. I see my time is up. Yeah, but don't sit down, please. I won't. What about the issue of damages? Sure, Your Honor. I'm, well, are, is there cognizable evidence of damages and what is it? And if not, don't you have a problem? And are we dealing, I think, including this, are we dealing with general or consequential damages? Okay, I'm glad you asked that. First of all, one thing I want to make really clear. We'll give both sides plenty of time in this case. So as to the damages issue, just to be clear, that pertains only to SEPSA's claim for transshipment for breach of the exclusive territory provision of the agreement. The wrongful termination claim was dismissed on 12B6. It never saw the light of day of discovery, summary judgment, damages, all of that. So the damages ruling that the district court made was pertaining only to the transshipment. So it would theoretically be possible. I certainly don't advocate that you should do this, but it would be possible for you to affirm the summary judgment ruling and still reverse on the wrongful termination. Am I correct that the transshipment, the failure to police? Yes. Is integral to the termination claim because the contract was terminated because your client was not paying for concentrate and because your client was said to be insolvent. My understanding is that your client's response is, yeah, that's because of transshipment and because Pepsi would not police that. Am I correct? If so, then your whole claim depends upon the duty to police. No, Your Honor. That's not quite correct because, well, it is true that to the extent, it is mainly correct. No, what is not correct is that, first of all, SEPSA contests that it was, in fact, insolvent and it contests that it did, in fact, fail to pay for concentrate. But even if it did, those are issues that the district court never allowed us to litigate. It just said you can terminate at will for any reason whatsoever. It never looked to the question of were any of the grounds for termination, in fact, met. Were we to remand, that's what we would discuss. That's what we would litigate before the district court. Those are certainly live issues that were never determined. Yes, there would be proof that pertained to transshipment, perhaps, if we were to talk about SEPSA's economic condition. Is there a dispute as to whether your client failed to pay for concentrate? There is a dispute, Your Honor. And there's a dispute as to whether your client was insolvent in March. There is, Your Honor. Yeah, SEPSA took the position, you can even see in its complaint, that it was not insolvent according to the applicable definition and that the concentrate payments were subject to a separate side agreement with Pepsi that SEPSA was, in fact, complying with. So those are issues that would be litigated before the district court but never were. All right, back to damages. Okay. General? General, Your Honor. Again, we're talking only about the transshipment here and here's why. So the district court found that they were consequential because it found that sales of Pepsi under this agreement were collateral to the agreement, that they were not governed by the EBA. Those are the words that it used. But they are governed by the EBA. They're governed by the EBA in minute detail. The EBA sets forth the prices on which SEPSA is to sell Pepsi to customers. It sets forth the conditions, the specific bottles, the specific packaging it's going to use, how much it's going to spend on marketing, what marketing materials it's going to use. Sets forth the cost of the concentrate that SEPSA is going to buy. It's much closer. It's almost a formula for damages, much closer to the cases in which this court has found lost profit to be general rather than consequential damages. The sale of Pepsi by SEPSA is the entire purpose of the agreement without which neither party's goals can be fulfilled. How about the causation, the causal link between other bottlers bringing, I guess this is where Pepsi is the lean man in its environment, and the injury that was done to the bot? Your Honor, I would say that, well, we have even admissions from Pepsi in the record as to this, letters where Pepsi writes to the other distributors and says, listen, you're transshipping and this is hurting SEPSA. This is causing them to lose sales. SEPSA, there's extensive testimony in this, in the record too, about SEPSA's ability to make more sales had it not been subject to this transshipment. You're saying because the general damages, the amount of damages does not have to be proved with specificity? Or not with such specificity, at least as the district court seemed to require. The district court were not contesting their decision to exclude the experts, but it said you can't put on any evidence whatsoever, not your company's general manager and CFO, even to talk about your business records, about the company's profits, about the company's capacity to manufacture or to meet increased demand or not. It said nothing. You can't put on anything. That's, in our view, enormously premature. What's your best case, if there is one, for the proposition that, I will call them, a person intimately familiar with the business, such as the CEO, CFO, are competent to provide testimony about financials? I would say there's, well, there's the Tevo case that we cite in our briefs, which I believe cites the commentary to the federal rules of evidence. I can pull that up if you'd like. Okay. Thank you. Did you have any further questions? No, not at this point. And I take it it is you who have reserved three minutes? It is. All right. Do I still have them? You have them? No, not at all. I just want to make sure that I'm not giving them to Mr. Gottschalk. Under the circumstances, that usually means you have five minutes, so I wouldn't worry about it. I'll take them all. Thank you, Your Honor. Mr. Gottschalk. And Mr. Solomon, don't worry. You're going to have plenty of time. Thank you, Your Honor.  My name is Hugh Gottschalk. I represent the Independent Bottlers Association, who, along with the Pepsi-Cola Bottlers Association, who also filed an amicus brief in this case, represent 87 independent Pepsi bottlers and their tens of thousands of employees. As required by their exclusive bottling appointments, the members of these two trade associations and the independent Pepsi bottlers have invested billions of dollars in their bottling plants, delivery facilities, other things, to manufacture and distribute Pepsi products. That investment, those businesses have gone on for decades on the universal and consistent understanding that the bottlers had the exclusive right to sell Pepsi in the territories that are defined in their appointments, that Pepsi would take reasonable steps, reasonable steps to enforce the exclusive territories, transshipping, and that the bottling appointments could only be terminated for cause, for one of the enumerated reasons. The district court in this case concluded that the contracts or at will can be terminated at any time for any reason, not withstanding these investments and the decades-long work under these agreements, and that Pepsi has no obligation to monitor or pursue transshipping. Can I ask a question? I don't mean to divert you, but I used to . . . went back when I was a real lawyer. I used to do a fair amount of amicus briefs, and usually they are moved by a particular fear. You've got marvelous arguments and arguers for the company. They're moved by a particular fear that the court's going to do something that's really, really serious. There are lots of things, but there's one thing, my God, we really don't want the court to do that. Can I . . . is that a fair question? It is, and it is actually the next point of my outline. If this court were to uphold that exclusive bottling appointments are terminable at will for any reason at any time, the billions of dollars investments, the members . . . the independent Pepsi bottlers would be forfeited overnight, overnight. Is it possible for there . . . that sounds hard. Is it possible for there to be some sense of reasonableness in there rather than perpetuity? Well . . . For a reasonable period of time, which may have to do with precisely the amount of investment. Not that I can think of one sitting here, but is there something short of that? I don't think so, Your Honor. I would defer to CEPSA on the particular contract argument, but I agree with their argument that if there are enumerated contract reasons for termination, we can have a fight over whether those provisions were met or not met, and the termination was correct or not correct, but those are the reasons for termination. I will say that there is no other case, other than the district court opinion in this case, that has held these exclusive bottling appointments are terminable at will, and to my knowledge, Pepsi has never made that argument before this case, so my client and its members and the PCA members are dealing with a world in which they've had these exclusive bottling appointments for decades, built up these businesses and billions of dollars investments, and are looking at a district court opinion that, for the first time, says Pepsi could wipe them out overnight, for no reason or any reason. So you're, again, I'm not trying to put you at odds with the people you're supporting, but it would be less harmful if we were focusing on general damages versus consequential damages. I got as far as CON. It would be less harmful to your clients if that's what we were focusing on, rather than on whether the contract remained in effect. One of the arguments we're making, Your Honor, we take no position on the damages and whether they prove their case or that. We don't have a position on that. Our position is that on the summary judgment order, there's two orders, the motion dismiss order, which dealt with termination, and the summary judgment order, which dealt with damages and transshipping. And with respect to the question you asked, Your Honor, on the summary judgment order, we take no position on damages. But if you decide on damages, then all those claims are gone and you don't need, as the Second Circuit, to deal with the issue of transshipping. So essentially, by dealing with damages, you could avoid making any pronouncement about transshipping. That's different, though, than what I was just talking about, which is in the 12B6R. That's what I wanted to know. Okay. Let me ask you this. What if, hypothetically, a Pepsi bottler decided to give up Pepsi and to bottle Sarsaparilla? Would the bottler have the ability to just say goodbye to Pepsi and start bottling something else? So I think there's two points in there. I'm not sure about the bottling Sarsaparilla and whether that would trigger a competitive provision of the clause and all that. But to get — Well, I mean, if they want out of their Pepsi contract, presumably they can bottle something else. Or they could just retire. They could just stop. They could close their factory and throw away their investment. Right. If they wanted to keep their factory, keep their workers, keep their employees, and then possibly back out of their contract with Pepsi and start bottling something else. I think there's two answers to that. There is no — as Counsel for Substance said, there is no specific termination clause related to the bottler. So in that event — That's why I'm asking. I understand. And in that event, they would not send a notice of termination under such and such clause because there isn't one. I believe they could simply walk away from their investment at their choice. Now, what rights Pepsi might have — Well, when you say walk away from their investment, there's a subsidiary question here. And that is, if you have a plant that bottles soda or pop, as they call it in the Midwest — Where I'm from. Presumably. And you've got trucks. You change the name on the trucks. You change your advertising agency, and you switch out a couple machines, and you start manufacturing 7-Up. Because I'm just questioning your view that the interest of the people you represent is that they would have to burn down their factories and go out of business if Pepsi terminated them. So let me put a couple of — I want to respond as directly as I can. Go ahead. The issue of the contract rights, if this happened, and whether there's a termination provision for the bottlers. As a matter of contract law, I agree with counsel, there is not one. I will just say very quickly, the body of law related to perpetual or indefinite contracts says it's not a perpetual contract if there's a termination clause. It doesn't — none of those cases say there have to be termination clauses on both sides. So my point on the contract — I'm going to get to the sort of the equities of your question — but on the contract law issue, there does not need to be a mutual contract termination. If there's a termination clause and the parties have contemplated termination in a contract, it's not perpetual. And under New York law, it doesn't get the presumption that it's going to be terminable at will because we don't like perpetual contracts. So that's sort of the pure contract argument. On the question you're answering, which I think is more equitable, am I sort of crying wolf because these guys could go out and sell Sarsaparilla if Pepsi terminated them? I am certain that all the members of the PCBA and the IBA, if faced with termination, would try to do exactly what you said. They wouldn't just sort of go home and fold their hands. However, I think the idea that they've invested billions of dollars in plants and trucks and distributions for Pepsi and Pepsi bottling and equipment and training and all that, and that they could just shift to Sarsaparilla is not realistic. I think there would be a — it may not be quite as bad because they have some ability to moderate their losses a little bit. The reason I'm asking is that if an exclusive distribution agreement or a franchise agreement requires very heavy investment, then surely there's an implication that you would not be able to terminate it at will because there would have to be some expectation on both sides that this arrangement is going to have some appreciable run. Absolutely, Your Honor. And that is — That's why I'm asking. I mean, if a bottling company can bottle this or can bottle that and just change the name on the trucks, that argument is not — that equity is not really that strong. And I think there's probably a factual question here we could debate about many of my clients — Well, if it's the industry, that's, you know, you're a friend of the Court here, so — I am confident — I am confident in telling this Court it would be an extraordinary hardship to the 87 independent bottlers to be shut down overnight under a claim of a terminal-of-will contract, and their remedy would be to regroup and try to find something else to distribute. Could they do that? Would they, in fact, try to do that? I am sure your instinct is right. I think that would still be an extraordinary hardship. But what if the bottlers terminate at will? Can they say, people have stopped drinking this in my state, and people are now into orange juice? Can I ask my colleague a question? Do you mean can a bottler — not all bottlers, but can a bottler — Can a bottler terminate at will? Not everybody, but one. Can he just stop and be — Yes, and just say, I want to bottle something else. Are they locked into Pepsi in perpetuity? As long as Pepsi wants to have them. And what I would say is there is no contract provision related to that. I agree with counsel that I think the practical matter would be they would just shut down and stop. And would Pepsi have a claim against them to hire the new bottler and damages? I don't know. I can say in the contract, the termination clause is not mutual. There is no specific termination provision related to the bottler. So it is in perpetuity? It's indefinite, I would say. Because in perpetuity is sort of a buzzword that ties into this public policy. And I just repeat, I think the New York law on that buzzword perpetuity is, if there's a termination clause, it's not an in perpetuity contract. Regardless of how the termination clause operates. Would it be indefinite? Yes, it would be indefinite. I agree. I think I'm out of time. Can I take 30 seconds to conclude here? Yes, you may. The bottom line is this case represents an incredible risk for the independent bottlers of Pepsi Cola products across the country. We ask that you reverse the district court's ruling for the reason that has been articulated on the terminable at will contract. The parties will argue it. We think it is clearly wrong. And on the trans-shipping issue, there's two possibilities. One, you can simply deal with damages and then not get to trans-shipping and create a Tenth Circuit opinion on trans-shipping. Or secondly, I think you can follow Pittsburgh. You can follow Mahaska, which we submitted supplementally a district court in Iowa that addressed it. And in that case, and I just, if you're going to get to this, I'm out of time. Page 38 of that opinion, the federal judge recites that Pepsi acknowledged in that case they have trans-shipping obligations. I don't have time to cite arguments in cases, but they are recited to have acknowledged in the U.S. exclusive bottling appointment context. They agree they have reasonable duties to stop trans-shipping. So I would either ask the court to follow up that opinion and reach the same conclusion or alternatively avoid the issue altogether. But in either case, we respectfully request this court to clarify that these are not terminable at will contracts. Well, if we avoid the question, do we necessarily have to rule one way or another as to whether they are? Well, maybe they are, maybe they aren't, but in any event. What I'm envisioning is that this court would say, we're not buying sepsis damages. The summary judgment is affirmed on the damages ruling and we're not getting to trans-shipping. But we're not, all I'm saying is, what you want us to say, I mean, optimally, we would say that these are indefinite contracts. Yes. If we cannot say that, avoid that issue and decide this case in some other way, that'd be better than nothing, yes, for you? It would be better than nothing, but logically, I don't think the way the case fits together because the terminable at will came out of a 12B dismissal order and these other issues came out of a summary judgment order, I don't think there's anything you can do on the summary judgment that allows you not to get to the 12B decision. Okay. Thank you very much, Your Honor. That's been very helpful, Mr. Castro. Thank you. May it please the Court. One second, Mr. Solomon. And you will, no, stay right there, please. Sorry, I just want to put some more time on your clock there. Why don't we start with 15 and as you can see in this. I just want to head up to 27. No, start at 15.  You don't quite understand how it works. You start at 15 and you get 27. Well, may it please the Court. I'm still Lou Solomon because there are two counsel arguing on the other side. I have brought with me William of Akum. I am going to be speaking through his voice to urge some judicial restraint. Pepsi is not in the business of opposing amicus presentations by its butlers. It did in this case because of the very different EBA at issue in Peru and in the United States because of the very different laws that created transshipping problems in Peru that don't exist in the United States. So what goes on in the southern district of Iowa, and I mean this quite seriously, has limited value as to what goes on with respect to bottling in Peru. It does. Both legally and factually. Well, both legally and factually and because the facts were so different, we really weren't sure that the Court would be benefited by kind of a full frontal sort of U.S. EBA analysis. I continue to think that this is what I think has to happen. On the motion to dismiss, if the Court affirms that this is not a perpetual contract, then it affirms. It affirms the entire appeal because if it's not a perpetual contract, then SEPSA concedes that you do not read good faith and fair dealing into an at-will contract. If the Court finds error on at-will, it still should affirm the 12B6 dismissal on the alternative ground that SEPSA has not appealed the finding of the district court of the absence of any evidence of the intent of the parties at the time in 1952 when this EBA was entered into. That's A328. The last argument I heard, I think, was that we had to decide whether there was a contract virtually indefinite or not. Are you saying that we don't have to decide that? That is what I'm saying, Your Honor. And the reason is because, by the way, the New York Court of Appeals and this Court does not differentiate between indefinite contracts and perpetual contracts. That's kind of a, it's a sort of new category, okay? It's a perpetual or it's at-will. That's what this Court has said. That's what the New York Court of Appeals has said. But I do, I am saying precisely that in 2009, after discovery, SEPSA sought to amend its complaint to add a claim for reformation. And the claim was, this is what the parties actually thought. So even assuming that there was no express language permitting or requiring perpetual contract, still the Court should reform the contract. Judge Rakoff denied that motion, found that it would be futile, and he did so because of, quote, the absence of any evidence that PepsiCo's understanding of the EBA at the time of its execution differed from the EBA's actual language. SEPSA has not appealed that ruling. They concede that, page 3, note 1 of their brief. And so this ruling stands. This finding stands, and not to be disturbed. So I am... Explain the finding again. What SEPSA did in its motion to reform was it said, well, really the intent of the parties in 1952 was that this contract should be perpetual. So they had already lost, as a matter of law, that it was perpetual. Judge Rakoff said no to that, and I'll explain why. And then they said, well, okay, even so, we want to reform the contract because the true intent of the parties was that this contract is perpetual. Now Judge Rakoff found that there was no evidence to support what SEPSA was saying. What stage of the proceedings was this? Was this a motion to dismiss it? No, Your Honor. It was after discovery. It was in 2009. They had already had the discovery they wanted, and they offered that discovery, and it was in that context, not on a motion to dismiss, but on a motion to amend where Judge Rakoff said, I'm not going to allow the amendment, the amendment, any amendment at this stage of litigation would be futile. And he said it would be futile because of the absence of any evidence that that was the party's intent at the time. And so if the panel has any issue with the at-will ruling, this is an alternative ground for affirmance because SEPSA has not appealed. They have not taken issue with this finding of the district court, which is on page A328 of the record, and that's an independent grounds to affirm the at-will nature of the EBA. I still need to address transshipment, but on the at-will nature, that is an alternative ground that I think this court has. This court, I don't think, needs to get there. To what extent would that conclusion affect the other hundreds of butlers? It's a radical. It has a radical effect. First of all, the EBA is different. The Peruvian EBA of this party, this is William of Ockham speaking again, right? You use a strong word, but I'm not sure what it means. You're saying it would be very different in this case? It would be very different. A ruling by this court that there was no evidence of the party's intent and, therefore, Judge Rakoff's opinion should be affirmed will have no effect on the EBAs or any litigation involving the EBAs of the other butlers. And that's correct. That's true in my mind for a couple of reasons. The first is that the EBA language is different. The EBA language that Judge Rakoff reviewed didn't have an heirs and assigns clause. Indeed, it had a contrary heirs and assigns clause. It said you may not devolve this contract to your heirs and assigns absent consent of PepsiCo, which could be withheld for any and all reasons. It was absolute and unchallengeable. No other EBA is like this. Well, there are – You could answer that question first. I can. William of Ockham, I think, would say that there are three other U.S. EBAs in the record. And I can give the court the cites for those. They begin on page 1002 of the record. There are three of them. None of them has that language. On the contrary, the U.S. EBAs have the language that it is assignable and it is transferable and it then transfers by operation of law, which, of course, the court could then say, well, wait a minute, if the parties entering into this had in mind that this was going to devolve to the next generation, then there had to be some duration implicit in this, none of which occurs, none of which appears in the Peruvian EBA. And none of which occurs in any other EBA that exists with Pepsi. When Judge Rakoff decided this case and this case was dismissed, PepsiCo looked at – this is in the record because the amicus has put it into the record. PepsiCo looked at the Peruvian EBA and looked at the circumstances of the termination, looked at the language of the EBA, and sent its bottlers a letter that said it does not find the Judge Rakoff decision precedential on the issue of at will. Judge Rakoff's decision was 10 years ago, and these are a litigious bunch of folks. Yet the amicus have not shown this court a single case that another court has said in the EBA context, in the bottler context, oh, we're following Judge Rakoff. There are half a dozen decisions in the Southern District and in the New York cases that follow Judge Rakoff, but not in this context because the language is different. PepsiCo has not asserted Judge Rakoff's decision. Just briefly, what context do the other courts look at it in? What happens in the other cases, transshipping seems to be the flavor of the decade. Okay? Not at will. PepsiCo hasn't asserted that these are a terminable at will. PepsiCo wrote the bottlers a letter. It's in the record because of the amicus that they're not going to assert that, and so I think the parade of horribles is wrong because the language of the EBA is different and should lead to a different result and because PepsiCo is not asserting it, and that's why you haven't heard a single case that has followed that. Now, it doesn't mean it was wrong, and I don't want to for a minute suggest that it was wrong. New York has great hostility to perpetual contracts. At the same time, New York is the center of the universe when it comes to freedom of contract. So New York made a simple rule, and the rule that was in force at the time the parties entered their agreement is the Kronk case, that's the ice cream case, and at that point in 1939, the general rule was well known that the court was not going to read language of duration into contracts that don't have it absent clear and unequivocal language, which compels it. Clear and unequivocal language. The New York Court of Appeals has not varied from that. It's the 1977 case which we cite as the most recent New York Court of Appeals case. This court has also not deviated from it, and I respectfully disagree with both counsel. The rule in New York is not, if there's a termination provision, then it's not at will. The rule in New York is, if there is a duration provision, that's what this court found in payroll, because what the courts have said is that if you got clear and unequivocal language, all right, then you can do it. If you say it's perpetual, then fine. Just so I understand this distinction with Peru, is it Pepsi's position that its contracts with U.S. bottlers are not terminable at will? It is Pepsi's position that they are not going to assert Judge Rakoff's decision that it is. I wasn't asking about Rakoff's decision. I really can't speak for Pepsi all over. I know of no case where Pepsi has asserted it. The language of the U.S. EBAs are different. That's because the U.S. ones contemplate Arizona Signs and successor corporations. That's the first reason, Your Honor. The second reason is that Pepsi never said that this at-will termination could be overnight, could be the guillotine coming down. What they said from the beginning to Judge Rakoff is that reasonable notice had to be given. And that embraces precisely the kinds of questions that I think the panel was concerned about. And that is, well, what if you make a big investment? There's no issue between SEPSA and... Well, what if you make a big investment? If you make a big investment, then the reasonableness of the notice should accommodate that. But that's not our case. Because SEPSA was losing money for 10 years and has never asserted that it didn't get reasonable notice. That's not in our case here. And that would be if the court wanted to... Why shouldn't we avoid all of these naughty issues and all of these nationwide and international ramifications by remanding for the district court to find out whether this bottler in Peru breached by failing to pay for concentrate or was insolvent or any of the other grounds that your client asserted for terminating this contract? I think the court should after 20 years because we're never going to get any more information than what's in the record already. SEPSA offered whatever evidence it had that there was intent by the parties to have this be perpetual. Yeah, but the district... I'm not saying remand for... I'm not even thinking of remanding for the adducing of additional evidence from 1952. But I... If everything is in the record, then it ought to be really very easy to ask the district court to make a finding as to whether the termination was consistent with the contract. Well, what the district court did find that it was consistent with the contract. I think what Your Honor means is given the list of termination provisions, which no court, not this court, this court with respect, in payroll, so long as you pay the premium, the policy remains in effect. That's a term. That's a duration. Right? In the Nicholas Labs case, which did have a list of termination provisions, what this court said is that, yes, because the language of the contract said this contract continues for successive five-year terms, then we are going to have it continue for five-year terms, and then we're going to do what Your Honor wants to do and see whether that list is right. I believe Judge Rakoff is right in the Fifth Circuit in the Treant case. I don't know what I want to do yet. But I think when Judge Rakoff said, listen, this is a serious problem, this one-way set of termination, okay, it's quite striking, right, that SEPSA didn't have any. So not only did he say that, but he also said that there is in the agreement things that cut in the other direction, right, there's no errors, okay. The Fifth Circuit in Treant is the closest that I've come. This Court has not addressed the issue, nor do I think it should here, of whether this non-exclusive list is sufficient to overcome the strong presumption for the need of clear and unequivocal evidence, and it held it is not. What if the circumstances in the non-exclusive list are sufficient under the facts of this case to support Pepsi's termination of this bottler? Doesn't that dispose of everything that gives people headaches? No, Your Honor. If the Court were disposed to avoid headaches, then the Court should affirm on the alternative ground that there is no evidence of intent. Isn't that... But to go back down after 20 years... But in the context of this, you're offering aspirin, Judge Jacobs is offering Advil, and he's wondering if it won't work the same way. Well, it works with respect very differently, because if you take the aspirin you affirm on the grounds already in the record, and if we reverse, then we're going to have another X number of years of litigation. We don't reverse, we vacate. And we send it back and say, please find these facts, or find these facts, and if that's a basis... I don't believe the facts are disputed. I can guarantee you that Counsel Persepsa will claim that the facts are disputed, and if they're disputed... If we're disputed, then we're going to need a trial for that, and it seems since there is... Summary judgment... I mean, if you think it's... Unless you concede that it is fairly disputed, then no trial is needed, because what's in the to establish that Pepsi's termination was pursuant to the contract, and we don't have to deal with whether it goes on for eons, or anything else. We do not assert that it was disputed. I'm confident that Counsel Persepsa will assert that it was disputed. You're saying it's not disputed, but we don't have a finding. Nor do... I think... If you can make the finding, that would take care of it, but we would need the judge to make that finding. I think what we have in the at-will is a decision between two litigants that I think, I hope I've tried to show, doesn't have any impact beyond this case. It's correct under New York law, because as... Under the Second Circuit ruling in Nicholas Labs and Payroll and Ketchum, and even in the Listerine case, because there is no provision in this contract that has a term. There's no duration at all. And I don't think this should be the first case for the Court to find that even in a case where there's no duration in the contract at all... If it is terminable at will, where in the contract would I find the proviso that you offered earlier that it obviously couldn't be a guillotine, it would have to be reasonable notice. New York law provides, Your Honor, and we conceded and asserted that at-will contracts are terminable at will on reasonable notice. That is the law of New York. We concede that. That's the big difference between the at-will termination and Paragraph 22. Paragraph 22, right, if you trigger Paragraph 22, you don't pay for the concentrate. You go insolvent, okay? There is no reasonable notice. That's why those were listed there. But the reasonableness of the notice has never been an issue between these parties. So theoretically, if somebody has invested tens of millions of dollars in a plant that is tailored to produce the beverage, this particular beverage, then reasonable notice may have to be a year, two years, or ten. We don't dispute that, Your Honor. We completely agree with that. And I would like with William of Ockham with one more minute to explain why the transition... Yes, Your Honor. I'll use that again. Thanks to the glories of Google, I understand William of Ockham is responsible for Ockham's razor, and that's what you're talking about? He is. Thank you. He's also responsible for the logical necessity of the argument that... Thank you. I didn't mean to be highbrow. I apologize. The transshipment claim is far easier. We don't need to address the Tenth Circuit or the Seventh Circuit or the Third Circuit or the Second Circuit. This Court has been I think at the forefront of not imposing those kinds of obligations in a silent contract. We don't have to address any of that. We don't have to address whether the U.S. matters at all for the simple reason that SEPSA concedes that Judge Rakoff properly struck their experts' damages. So the only damages evidence they offered on summary judgment was the late affidavit of Mr. Tirado. Mr. Tirado was a fact witness who didn't know the facts, who didn't make an offer of proof of what he was going to say, who used the same evidence that the District Court found unreliable when it struck the experts. And Judge Rakoff said, I'm not going to allow him to testify. That's all that happened. That's the only thing in the record. And this Court can affirm simply by finding that that was not an abuse of discretion. You're saying that irrespective of whether there's a contract that goes on in perpetuity or whatever is the better word, it doesn't matter because under that contract in this litigation compensable damages were not proved. Is that what you're saying? It is what I'm saying, Your Honor. I believe that applies, if everyone agrees, that applies to the transshipment claim. Okay? Because it was on the transshipment claim the wrongful termination claim had already been dismissed. But the argument is that there was that they were general damages versus consequential. And as I understood the District Court's rationale, you need an expert to establish consequential damages. The District Court did find that they were consequential. I believe that's entirely consistent with this Court in Tractabelle. It's entirely consistent with the New York Court of Appeals in Biotronic. The Court need not look further than Biotronic, which cites the District Court approvingly. But the Court does not have to get to that. I thought that Judge Hall's question left open the issue as, okay, there were consequential damages, but what about general damages? And it was general damages that Judge Rakoff struck Mr. Tirado's affidavit. It was on the issue of general damages. That was a separate ruling that he made? You're saying that what we have before us is that if there's a contract we can we could, if we wished, if we thought, no, we could, if we thought it was correct, rely on the District Court for the notion that irrespective of whether there was a contract in effect there were no damages general or consequential that survived. That is correct, Your Honor. Sepsa does appeal that ruling of Judge Rakoff. It's an abuse of discretion standard when he struck the fact witness. I want to be sure when you're agreeing with me you're really agreeing with me and not saying yes and. You're saying that even if there's a contract it would be grounds for affirmance that with the contract in effect there was Judge Rakoff concluded and we can affirm that there were no  general or consequential. That is exactly what PepsiCo is arguing, Your Honor. We make that argument with respect to the transshipment claim. I'm trying to figure out whether we're covering all of the claims. And we make that argument all I was going to say, Your Honor, is that I do need Judge Rakoff's integrality argument when it comes to the motion to dismiss. Fair enough. And we do need that and we make that we assert that because they claim that the wrong was done and the harm that occurred was because of the transshipment and that PepsiCo didn't do enough for transshipment and that having been taken care of we do assert that then Judge Rakoff's finding that there are no general damages and no consequential damages means that there are no damages and the case should be affirmed on that ground. Thank you very much, Mr. Solomon. Thank you, Your Honor. And I think we got you up to the 27 minutes you wanted. Almost exactly. Ms. McClain. All right. Okay, so to pick up where Mr. Solomon left off as to the damages for the contract claim I would say no, they're not intertwined with the damages for the contract with Judge Rakoff's damages ruling. Even if there are no damages for transshipment, that isn't the only basis for damages for wrongful termination. It's the entire cessation of SEPSA's business. Not only transshipment lost profits, but the death of the business altogether. It would, Your Honor. I would submit that it would. And in any event, Judge Rakoff never ruled on that. He only ruled as to whether the lost profits for transshipment were consequential or general. That question was never litigated. But returning to the at will... I'm sorry, not contesting? Not contesting what you just laid out for us. His determination that transshipment damages were consequentials. No, we are contesting that, Your Honor. Okay. We would submit that they're general. What I was just saying is that there was never a ruling as to whether damages for wrongful termination were general or consequential. Even if we agree with him on that, that doesn't clear the board. Nothing quite gets it off your plate, except perhaps the suggestion of remanding to the district court to determine whether the events actually were met. I want to return to Payroll Express because, again, Payroll Express doesn't say so long as Payroll Express pays the premiums, the contract remains in effect. That is not what it says. It says upon the non-payment of premiums, Aetna has the option of terminating. It's the same. That is enough of a durational event. It's a determinable duration. The contract lasts so long as none of the events happen and the party doesn't exercise its right to terminate. What kind of contract was that? An insurance contract, Your Honor. For what? Payroll insurance. People cashing payroll checks and insuring against theft of those. But in any event, the point there is that it doesn't have to be an automatic termination. That is enough to take it out of the realm of perpetual contracts. And it is simply not true that there's only at will and perpetual. Even, again, this Court wrote the parties here expressly agreed that Aetna could terminate the policy upon payrolls could terminate the policy. Upon payrolls failure to pay premiums do. There is therefore no need to invoke the presumption against construing contracts as perpetual. A term which serves only to confuse. Again, perpetual contract goes on forever, period. Contract for an indefinite term, not fixed in years, but that does have conditions upon which it may terminate at any time is something different than a perpetual contract, and it is something different from a contract that is terminable at will. And that's the situation we have here. You fit into that category. We do, Your Honor. Now, Your Honor, with respect to the And what is the New York Court of Appeals case that would identify such a contract? I would point you to I mean, most of the cases that this Court is citing in Payroll Express are not New York Court of Appeals cases. They're different lower court opinions. There's Warner-Lambert. There's Nicholas is another opinion from this Court. There's Ketchum v. Hall Syndicate. Aronworth. Now, most of those were situations in which it said what Mr. Solomon said, something like the contract will continue so long as one party does something. That kind of distinguishes it, doesn't it? But then this Court noted that and said, applying these principles, we also conclude that this contract, which doesn't have that distinction, is also not a perpetual contract. It took that distinction and said there's no reason for that distinction, and it makes sense because it's a two-step termination provision. So long as one of the events doesn't happen and so long as Pepsi doesn't exercise its right to terminate, it's just an event that happens to have two pieces to it rather than one. There's no real reason why it should be different, why it should matter whether it's automatic or at the option of the party. It's still a determinable time upon the happening of a two-part event. Now, Your Honor, as for the reformation claim, that Mr. Solomon had brought up, to be clear, of course there's evidence of the intent of the parties not to have an at-will termination. That evidence is the contract itself. It was only after Judge Rakoff said, well, the contract doesn't say what you think it says, that Sepsis said, oh gosh, well, I thought it said that, but if it doesn't say that, then I guess I'm going to try and make it look like it does. Of course, you're looking at Judge Rakoff is looking at the evidence of intent at that time, whether there's evidence or not, he's already considered that the contract itself isn't good evidence for that. What there is enormous evidence of in the record that Pepsi doesn't mention is the party's course of performance and the numerous statements that Pepsi has made as to how it viewed this contract as lasting forever, and not just to U.S. bottlers, but specifically to Sepsis, statements made to Sepsis, internal documents of Pepsi saying an obstacle to our plan to consolidate and getting rid of Pepsi, of Sepsis, rather, is Sepsis' quote-unquote perpetual EBA. Again, they use the term in the loose sense of not terminable at will. There's enormous evidence in that regard. Yes, it doesn't help you show mistake for purposes of reformation, but that's not what we're talking about here. We're helping, we're talking about evidence of what the party's intended when they actually wrote the contract. And so I would say that you cannot affirm on the grounds of reformation because it doesn't address the correct construction of the contract that only came up after the contract itself was taken out of play wrongfully in our view. Thank you, Ms. McClain. Anything else? Yes, Your Honor. If I have my extra five minutes. You're closing in on one and a half left. Oh, one thing I'd like to point out about the Fifth Circuit case that Mr. Solomon referred to, the Triant case. First of all, I would submit respectfully that it's simply wrongly decided. But again, even the, there's a case in the Supreme Court of Illinois, the Jesperson case that's also cited in Pepsi's brief that points out in the dissent that Triant and payroll express are at odds with each other. The court's saying, why do we have to follow the Texas law as expressed in Triant? We could have just as well followed New York law in payroll express, which is different, which doesn't have this provision of saying that if the events seem to be universal, then they don't count. Then they don't mean anything. They're erased from the contract. That clearly is not New York law. Again, all you have to do is look at payroll express, non-payment of premiums. What could be more universal than that? And if the panel has no further questions? Yes. I think we're done. I will say, maybe speaking for Judge Sack and me, who saw this now 15 years ago. If you say so. I think it was 11. Well, I have a decision with Judge Sack and me from 2004. Oh, that's true. There were two. Oh, wrong case. Oh, no. Well, let's hope it's not another 15 when we see you again. Some of us may not be here. Anyway, thank you. Thank you both. We'll take this case under advisement and we will get you a decision.